## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERIC MONSERRATE and JASON INFANTE, Individually and on Behalf of All Others Similarly Situated,** | **ECF Case** |
| **Plaintiffs,** | |
| -against- | **11-cv-6090 (DLI)(RML)** |
| **TEQUIPMENT, INC., ROBERT SUGARMAN and DAMIAN SCARFO, Jointly and Severally,** | |
| **Defendants.** | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

    I.     Procedural History ................................................................................ 1

    II.    Discovery .............................................................................................. 2

    III.   Settlement Negotiations ....................................................................... 2

SUMMARY OF THE SETTLEMENT TERMS.................................................... 2

    I.     The Settlement Fund ............................................................................ 2

    II.    Release ................................................................................................. 4

    III.   Eligible Employees .............................................................................. 4

    IV.   Allocation Formula .............................................................................. 4

    V.    Attorneys' Fees and Litigation Costs .................................................. 5

ARGUMENT ....................................................................................................... 6

    I.     The Settlement Class Meets the Legal Standard
          For Class Certification ......................................................................... 6

          A.  Numerosity ...................................................................................... 7

          B.  Commonality .................................................................................... 7

          C.  Typicality ........................................................................................ 8

          D.  Adequacy of the Named Plaintiff .................................................... 8

          E.  Certification is Proper Under Rule 23(b)(3) .................................... 9

              1.  Common Questions Predominate ............................................. 9

              2.  A Class Action is Superior Mechanism ................................... 10

    II.    The Proposed Settlement is Fair, Reasonable and Adequate,
          and Should Be Approved ..................................................................... 11

          A.  The Proposed Settlement is Procedurally Fair ................................ 12

i

B.   The Proposed Settlement is Substantively Fair ...............................................13

1.   The Complexity, Expense and Likely Duration
of the Litigation ...........................................................................14

2.   Reaction of the Class to the Settlement ....................................................14

3.   The Stage of the Proceedings and the Amount
of Discovery Completed ...........................................................15

4.   Risk of Establishing Liability and Damages .............................................16

5.   Risk of Maintaining the Class Action Through Trial .............................17

6.   Ability of the Defendants to Withstand a Greater Judgment ..................17

7.   Range of Reasonableness of the Settlement Fund
to a Possible Recovery In Light of the Attendant Risks of Litigation ......18

III.   Approval of the FLSA Settlement is Appropriate
Under Federal Law .........................................................................19

CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

Page

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ...............................................................................................9, 10

*Ansoumana v. Gristedes Operating Corp.,*
   201 F.R.D. 81 (S.D.N.Y. 2001) .......................................................................................19

*In re Austrian & German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................14, 16, 18

*In re BankAmerica Corp. Sec. Litig.,*
   210 F.R.D. 694 (E.D. Mo. 2002) ....................................................................................12

*Brooks v. Am. Export Indus., Inc.,*
   No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ..........................18

*Cagan v. Anchor Sav. Bank FSB,*
   No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) ..........................18

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)....................................................................................... passim

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)..............................................................................................7

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001)......................................................................................11, 12

*Denney v. Deutsche Bank AG,*
   443 F.3d 252 (2d Cir. 2006)............................................................................................6

*Dziennik v. Sealift, Inc.,*
   No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ...........................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
   No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007).........................12

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................. passim

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) .....................................................................................................7

*Gilliam v. Addicts Rehab. Ctr. Fund,*
   No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ..........................19

i

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968).........................................................................................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................11

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) ...............................................................................10

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)..............................................................................16

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) .................................................................................7

*Khait v. Whirlpool Corp.*,
    No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ............... passim

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) .................................................................................20

*Maley v. Dale Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................15

*Manning v. N.Y. Univ.*,
    No. 98 Civ. 3300, 2001 U.S. Dist. LEXIS 12697 (S.D.N.Y. Aug. 21, 2001) ........................20

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)....................................................................................6, 8

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) .................................................................................9

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ...................................................................................29

*Mohney v. Shelly's Prime Steak*,
    No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ............ 8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)......................................................................................18

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...............................................................................16

*Prasker v. Asia Five Eight LLC*,
    08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010) ................ passim

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................................6

*Reyes v. Buddha-Bar NYC*,
    08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277 (May 28, 2009) ......................7

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ............15

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).......................................................................................8

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986).......................................................................................9

*Sampaio v. Boulder Rock Creek Developers, Inc.*,
    No. 07-CV-153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007) ............20

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) ...............11

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ..........19

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008)........12

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ..........7

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ..........16

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...............................................................................9, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................11, 12, 13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)....................................................................................15

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...................................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................................... passim

*Manual for Complex Litigation, Third*, § 30.42 (1995) ...............................................................12

## INTRODUCTION

The parties' $3,100,000.00 settlement of this civil class and collective action satisfies all of the criteria for final approval.  Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of Settlement Class, Final Approval of the Class Action, and Approval of FLSA Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit B to the Declaration of Brent Pelton in Support of Plaintiffs' Motion for Final Approval ("Pelton Decl."); and (3) approving the FLSA Settlement.

On July 18, 2012, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting October 15, 2012 as the date for the final fairness hearing. (Pelton Decl. ¶ 9)  The members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  Not a single member of the class objected or opted out of it. (Pelton Decl. ¶ 19) With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Procedural History

Plaintiffs Eric Monserrate ("Monserrate") and Jason Infante ("Infante" and, together with Monserrate, the "Named Plaintiffs") are former installers and field service technicians who worked for Tequipment, Inc. ("Teq" or, the "Corporate Defendant"), Robert Sugarman

1

("Sugarman") and Damian Scarfo ("Scarfo" and, together with Sugarman, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants").

On December 15, 2011, the Named Plaintiffs commenced this action as a collective action under 29 U.S.C. § 216(b) and as a putative class action under Fed. R. Civ. P. 23, alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") and New York common law against the Defendants in the United States District Court for the Eastern District of New York, Civil Action No. 11-cv-6090 (DLI)(RML) (the "Complaint" or, the "Action"). (Pelton Decl. ¶ 4; Ex. A). After the Complaint was filed, four additional plaintiffs opted-in to the Action by filing Consent to Sue forms with the Court.

After expedited discovery and settlement negotiations, the Parties reached an agreement to settle the Action on behalf of all current and former employees of Defendants who worked as Installers or Field Service Technicians in New York at any time between December 15, 2005 and July 11, 2011 (the "Class Members"), pending this Court's approval, on or around June 1, 2012.

On July 18, 2012, this Court preliminarily approved the Settlement Agreement, and authorized notice of the proposed settlement (the "Notice") to be sent to the Class Members. Plaintiffs' counsel sent the Notice to the Class Members on August 2, 2012. The Notice informed Class Members of the preliminary settlement amount, described the manner in which this award was computed, encouraged the Class Members to contact Class Counsel to obtain their individual allocation, stated Class Counsel's intent to seek attorneys' fees amounting to twenty percent (20%) of the Settlement, and informed the Class Members of their right to object to the Settlement or to opt-out of the Settlement.

2

## II.     Discovery

In the best interest of the Parties and in preparation for a non-binding mediation scheduled for May 9, 2012, the Parties engaged in expedited informal discovery prior to engaging in protracted litigation. (Pelton Decl. ¶ 5)  Defendants and Plaintiffs produced work and payroll records reflecting the hours worked by Class Members and their pay throughout the statutory period. (*Id*.) The Parties also prepared in-depth legal and factual analysis of their claims and defenses and produced various damages spreadsheets relating to unpaid overtime and prevailing wages. (*Id.* ¶ 6)  In addition, Plaintiffs' counsel conducted extensive investigation into the Plaintiffs' claims and the possible defenses through discussions with several representatives from the New York State Department of Labor and the NYC School Construction Authority, in addition to several of Defendants' current and former installers. (*Id*.)

## III.     Settlement Negotiations

The Parties began engaging in settlement discussions soon after the Named Plaintiffs filed the Complaint.  The Parties agreed to engage in a non-binding mediation and participated in an all-day mediation before Michael Young, Esq. of JAMS on May 9, 2012. (Pelton Decl. ¶ 7)  While the Parties did not reach an agreement at the initial mediation, the parties continued engage in discussions to negotiate a settlement. (*Id.* ¶ 7)  The Settlement Agreement was reached after several weeks of telephone conferences and negotiations between the Parties relating to the detailed terms of the Settlement Agreement and notice to the class. (*Id*. ¶ 8, 9)

### SUMMARY OF THE SETTLEMENT TERMS

## I.     The Settlement Fund

The Settlement Agreement creates a fund of $3,100,000.00 (the "Fund").  The Fund covers attorneys' fees and costs and Class Members' individual monetary recovery. (Pelton Decl.

Ex B (Stlmt. Agmt) § 1.25)   Defendants' agreed to make an initial payment to the Class

Members and for Class Counsel's fees and costs, together equaling an amount of no less than

$1,750,000.00, within five (5) days from the last of the following dates: (a) thirty days after entry

of an order granting final approval of the Settlement, if there are no appeals, or (b) if an appeal of

the Court's decision granting final approval, the date on which the appeal is withdrawn or after

an appellate decision affirming this final approval decisions becomes final.   The remaining

balance of the Fund has been agreed to be paid by Defendants no later than one year from the

date of the initial payment.

**II.**   **Release**

The Settlement Agreement provides that every Class Member who does not timely opt

out of the settlement will release his or her FLSA and NYLL wage and hour claims. (Pelton

Decl. Ex. B (Stlmt. Agmt.) § 2.5)

**III.**   **Eligible Employees**

There are two partially overlapping categories of workers entitled to receive payments

from the Fund, the "FLSA Class" and the "Rule 23 Class."   The members of both the FLSA

Class and the Rule 23 Class are collectively referred to for settlement purposes as the settlement

"Class Members."   The Class Members consists of Named Plaintiffs Eric Monserrate and Jason

Infante and all other Installers or Field Service Technicians who worked for Tequipment, Inc.

during the relevant statutory period (December 5, 2005 to July 11, 2011). (Pelton Decl. Ex. B

(Stlmt. Agmt.) § 1.4; Ex C. (Notice))

**IV.**   **Allocation Formula**

According to the Settlement Agreement, the Class Members who do no opt out of the

settlement will be paid pursuant to an allocation formula based on the following: (a) the Net

4

Settlement Amount attributable to $3,100,000.00, less applicable attorneys' fees and costs, will be distributed to Class Members based upon their percentage of workweeks worked in the Relevant Statutory Period as compared to the total number of workweeks worked by all Class Members in the Relevant Statutory Period, as reported in the documents exchanged by the Parties; (b) multiplying each Class Member's percentage share times the Net Settlement Amount; and (c) adjusting the resulting calculations by the wages earned by each individual class member, the New York State counties in which the Class Member performed installations for Teq, time spend working as an employee of a Teq subcontractor and the number of alleged prevailing wage installations actually performed as reflected in Defendants' records. (Pelton Decl. Ex. B (Stlmt. Agmt.) § 3.3(b)).   Class Members who have previously received a distribution from the prior [payments will have their allocation reduced by the payment previously made.

Settlement checks paid to Class Members will be allocated seventy percent (70%) to W-2 wage payments to compensate for alleged unpaid prevailing wages and thirty percent (30%) to compensate for alleged unpaid overtime wages. (Pelton Decl. Ex. B (Stlmt. Agmt.) § 3.3(G)) Half (1/2) of the overtime wage portion will be issued as a W-2 payment and the other half (1/2) will be deemed non-wage liquidated damages and interest subject to 1099 reporting. (*Id*.)   All wage payments to Class Members shall be subject to applicable payroll and withholding taxes. (*Id*.)

## V.    **Attorneys' Fees and Litigation Costs**

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Reimbursement of Costs simultaneously with this Motion.

## ARGUMENT

**I.      The Settlement Class Meets the Legal Standard for Class Certification**

When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable. *Denney v. Deutsche Bank AG,* 443 F.3d 252, 270 (2d Cir. 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).

The Court should grant final certification of the settlement class because all of the certification requirements for settlement purposes are met and Defendants consent to certification for settlement purposes. (Pelton Decl. Ex. B (Stlmt. Agmt.) § 2.7(A))   Plaintffs' respectfully request that the Court certify the following Class for purposes of effectuating the settlement:

All current and former employees of Tequipment, Inc. who worked as Installers or Field Service Technicians in New York at any time between December 15, 2005 and July 11, 2011.

Under Rule 23(a), a class action may be maintained if all the prongs of Rule 23 (a) are met, as well as one of the prongs of Rule 23 (b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility: in evaluating class certification.

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

A.     **Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, Plaintiffs satisfy the numerosity requirement because there are approximately 60 members of the Rule 23 class. (Pelton Decl. ¶ 17.)

B.     **Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181.  There must be a "unifying thread" among the claims to warrant class certification. Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986)  Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves common factual and legal issues – whether Defendants' failed to pay Class Members overtime premiums for hours worked in excess of forty (40) in a week and whether Class Members were paid prevailing wage rates for their work performed pursuant to public work contracts.  These alleged overtime and unpaid prevailing wage violations – involving common operative facts stemming from corporate policies that affected the class members in the same way – are sufficient to meet Rule 23(a)'s commonailty factor. *See Prasker*,

2010 U.S. Dist. LEXIS 1445, at *4-5; *Reyes v. Buddha-Bar NYC*, 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *6 (May 28, 2009); *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *10-11 (S.D.N.Y. Mar. 31, 2009).

### C.      Typicality

Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 class members' claims.  The Named Plaintiffs have the same principal job duties as the class members.  They also suffered the same injuries as the class members as a result of Defendants' failure to pay overtime and prevailing wage rates. *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *5; *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *6; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *10-11.

### D.      Adequacy of the Named Plaintiffs

The Named Plaintiffs also meet the adequacy requirement.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests

8

antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys.*, No. 05 Civ.
5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation
marks omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will
defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007
U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).
Here, the Named Plaintiff and the class members have no antagonistic interests. *Prasker*, 2010
U.S. Dist. LEXIS 1445, at *6; *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *6-7; *Mohney*, 2009 U.S.
Dist. LEXIS 27899, at *11-12.

### E.     Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any
questions affecting only individual members and that a class action is superior to other available
methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).
This inquiry examines "whether proposed classes are sufficiently cohesive to warrant
adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).
Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of
commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized
proof, and thus applicable to the class as a whole, . . . predominate over those issues that are
subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d
124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a class-
wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d
at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the

predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members worked for Defendants as hourly workers, were not paid a proper overtime premium for hours they worked over forty in a workweek, and were not paid prevailing wage rates when performing working on public works projects. They are also unified by a common legal theory – that Defendants' policies of failing to pay overtime and the prevailing wage rates violate federal and New York law. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *6-7; *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *7; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12; *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question for class treatment").

The only individualized issues pertain to the calculation of damages. Individualized damages calculations do not defeat Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in wage and hour litigation does not impact the predominance analysis).

## 2.    A Class Action is a Superior Mechanism

Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.

10

Fed. R. Civ. P. 23(b)(3).[1]

Here, Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because allegedly wrongful conduct occurred within the jurisdiction of this Court. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *7; *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *7-8; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12. Moreover, employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *7-8; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

## II.     The Proposed Settlement is Fair, Reasonable and Adequate, and Should Be Approved

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

Courts examine procedural and substantive fairness in the light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *19-20 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 U.S. Dist. 10848, at *16. Here, even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### A.    The Proposed Settlement is Procedurally Fair

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *10. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at *10-11 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length

12

negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Here, the settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. Plaintiffs engaged in substantial informal discovery before agreeing to resolve this case, including interviewing class members and reviewing Defendants' time records and pay data spanning a six-year period. (Pelton Decl. ¶¶ 5-6.) From these sources of information, Plaintiffs' counsel were able to evaluate the strengths and weaknesses of Plaintiffs' claims.

To resolve the case, and to prepare for mediation, the parties engaged in expedited informal discovery and settlement discussions in order to reach a resolution of the lawsuit in a timely manner. (Pelton Decl. ¶¶ 5-6.) At all times during the settlement process, the parties negotiated on an arm's-length basis. These arm's-length negotiations involving counsel well-versed in wage and hour law raise a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 U.S. Dist. LEXIS 4067, at *15; *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *10.

**B.**     **The Proposed Settlement is Substantively Fair**

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), provides the analytical framework for evaluating the substantive fairness of a class action settlement. The "*Grinnell* factors" guide district courts in this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.     The Complexity, Expense and Likely Duration of the Litigation

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with approximately 60 putative class members and both federal state wage and hour laws at issue.

Although there has been significant informal discovery, substantial additional discovery would be required to establish liability and damages, including depositions of Plaintiffs and Defendants', and possibly industry experts.  A trial would be fact-intensive, with testimony of Plaintiffs, Defendants, class members and experts.  Preparing and putting on evidence at such trial would consume tremendous amounts of time and resources and demand substantial judicial resources.  A trial on damages, even on a representative basis, would be costly and would further defer closure.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first Grinnell factor weighs in favor of final approval.

### 2.     Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs.*

14

*Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003).

Here, the Named Plaintiffs as well as other Class Members participated in the negotiations and granted their consent to the Settlement.  On August 2, 2012, Class Counsel sent the court-approved Notice to 60 Class Members, which informed the Class Members that they could object to or exclude themselves from the Settlement and explained how to do so.  No Class Member objected to the Settlement and no Class Member requested exclusion.  Class Counsel has subsequently spoken with many Class Members regarding the terms of the Settlement and have received no opt-out requests from potential Class Members and to date, no Class Members have objected to the Settlement. (Pelton Decl. ¶ 19.)

This favorable response demonstrates that the Class Members approve of the results, which supports final approval. *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *16-17 (Second *Grinnell* factor met where no class member objected and only 2 opted out); *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12 (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (where 13 out of 3,500 class members objected and 3 opted-out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The Parties have engaged in certain informal discovery throughout the pendency of the Action.  The parties have analyzed these records in assessing Plaintiffs' claims.  Plaintiffs have analyzed potential liability based on the estimated number of hours worked and payments received by their clients.   The pertinent question is "whether counsel had an adequate

appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). The parties' discovery here meets this standard.

In addition to the electronic and paper discovery, Plaintiffs' counsel interviewed several Class Members to obtain factual information as part of their investigation of the claims both during an all-day non-binding mediation and prior to the Settlement Agreement. (Pelton Decl. ¶¶ 5-8.)

Accordingly, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12-13; *Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"). This factor also supports final approval.

### 4.     Risk of Establishing Liability and Damages

The risks of establishing liability and damages further weigh in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *21-22 (S.D.N.Y. June 22, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Although Plaintiffs' case is strong, it is not without risk. A trial on the merits would

involve significant risk as to both liability and damages because of the fact-intensive nature of proving Plaintiffs' claims.   In addition, at trial Plaintiffs would have to establish that the violations were willful, which is also a fact-intensive inquiry.   Moreover, even if Plaintiffs were successful at trial, Defendants would likely appeal.

While Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy.   The proposed settlement alleviates this uncertainty. These factors therefore weigh in favor of final approval. *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *13 ("fact-intensive nature" of plaintiffs' tip misappropriation and other wage and hour claims supported final approval of settlement).

### 5.   Risks of Maintaining the Class Action Through Trial

While the Plaintiffs have not yet filed a motion for conditional certification of a collective action under the FLSA or a motion for class certification for Plaintiffs' state law claims, the parties agree to request certification of a Rule 23 class action for purposes of settlement.   The parties contest whether collective and class certification would have been granted and whether, at the close of discovery, the conditionally certified FLSA case would have been decertified given the individualized inquiry needed to determine the non-payment of wages.   Settlement eliminates the risks, expense and delay of the certification and possible decertification processes.   This factor favors final approval. *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *18; *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *13.

### 6.   Ability of the Defendants to Withstand a Greater Judgment

The settlement amount represents a modest percentage of Defendant's revenues.   This is not a case where further litigation would have placed in jeopardy the ability of Plaintiffs to

collect a judgment.  That said, the substantial settlement amount has necessitated a payment plan from Defendants over the course of one year.  Still, the settlement more than compensates the Class Members for their alleged unpaid overtime and prevailing wages as shown by the documents and such wages are necessarily difficult to prove at trial.

> **7.    Range of Reasonableness of the Settlement Fund to a Possible Recovery In Light of the Attendant Risks of Litigation**

The parties reached a settlement after carefully evaluating the risks and costs of future litigation, including continued attorneys' fees.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Courts in this Circuit have approved class settlements even where the amount of the settlement is a small percentage of the best possible recovery. *See Spann*, 2005 U.S. Dist. LEXIS 10848, at *19-20 (granting final approval where $2.9 million class settlement was only 18% of plaintiffs' highest possible litigation payoff); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of

18

the best possible recovery).

Here, the settlement amount fully compensates the Class Members for all of their alleged unpaid overtime and prevailing wages according to Defendants' own records, plus an additional amount for liquidated damages.

When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable. These factors weigh in favor of final approval.

## III.    Approval of the FLSA Settlement is Appropriate under Federal Law

Plaintiffs also request that this Court finally approve the settlement of their FLSA claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23 of the Federal Rules of Civil Procedure. *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]"). Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Khait*, 2010 U.S. Dist. LEXIS 4067, at *19 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). Accordingly, the high

19

standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. *See id.*

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1353-54). "If the proposed settlement reflects a reasonable compromise over contested issues," the court should approve the settlement. *Id.*; *see also Manning v. N.Y. Univ.*, No. 98 Civ. 3300, 2001 U.S. Dist. LEXIS 12697, at *35 (S.D.N.Y. Aug. 21, 2001) (recognizing that the Supreme Court has allowed an FLSA settlement for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07-CV-153, 2007 U.S. Dist. LEXIS 66013, at *3 (E.D.N.Y. Sept. 6, 2007) (same).

In this case, the settlement was the result of contested litigation and arm's-length negotiation. Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation, numerous conference calls and negotiations from the beginning of the litigation and, ultimately reached the settlement pending before the Court. (Pelton Decl. ¶ 8.) Plaintiffs and Defendants were both represented by counsel at all times throughout the negotiations and litigation. Accordingly, the Settlement Agreement resolved a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for final court approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court (1) certify as final the Class described above; (2) approve as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement; (3) approve the FLSA Settlement; and (4) granting such other, further, or different relief as the court deems just and proper.  A Proposed Order Finally Approving the Settlement is attached to the Notice of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement as Exhibit A.

Dated:  New York, New York
         September 28, 2012

                            Respectfully submitted,

                            PELTON & ASSOCIATES, PC


                            By:    /s/*Brent E. Pelton*
                            Brent E. Pelton [BP-1055]
                            Taylor B. Graham [TG-9607]
                            111 Broadway, Suite 901
                            New York, New York 10006
                            Telephone: (212) 385-9700
                            Facsimile:  (212) 385-0800

                            *Attorneys for Plaintiffs*

21